IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

STEVEN J. ZARLING, JACKIE GRISSOM,
KIM C. GRISSOM and TERRY GRICE                                             PLAINTIFFS

VERSUS                                          CIVIL ACTION NO. 2:08cv134KS-MTP

GEORGE SEELING and
EMERALD COAST EATERIES                                                    DEFENDANTS

## MEMORANDUM ORDER AND OPINION

This matter is before the court on a Motion to Exclude Expert Testimony of Dr. James E. Mullen filed on behalf of the defendants, George Seeling and Emerald Coast Eateries. [Doc. #28] (March 24, 2009). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken and should be **denied**. The court specifically finds as follows:

## FACTUAL BACKGROUND

This case arises from a motor vehicle accident on November 6, 2007. On that date a vehicle operated by Defendant George Seeling approached a vehicle operated by Plaintiff Steven Zarling and carrying the remaining named Plaintiffs as passengers from behind and collided with it at or near the intersection of U.S. Highway 49 and U.S. Highway 98 in Hattiesburg, Mississippi. *See* Pl.'s Compl. ¶ 10, 11 [Doc. #1] (June 19, 2008).

As a result of this altercation the Plaintiffs allege that Zarling's vehicle was significantly damaged, and that he and each of the other named Plaintiffs have suffered physical injuries requiring prolonged medical treatment at substantial expense. *Id*, at ¶ 18.

Plaintiff Zarling refused medical treatment at the scene of the collision, choosing instead to make his way to an emergency room later that day. *See* Def.'s Br. at 2 [Doc. # 29]. He was promptly released, and received no medical treatment until April 16, 2008. *See* Def.'s Ex. 1 at 39-40, 42, 54 [Doc. #28-2].

Dr. James E. Mullen has been designated as an expert by the Plaintiffs to tender an opinion that Zarling sustained a fractured hip as a result of the accident at issue in this case, and that Zarling requires a hip replacement. The Defendants filed a Motion to Exclude Expert Testimony on March 24, 2009. *See* Def.'s Mot. [Doc. #28].

The Defendants assert that Dr. Mullen is unqualified to issue the proposed opinions, arguing that Dr. Mullen did not employ appropriate methodology, and that his opinions are not justified by the facts of the instant case. Def.'s Br. at 1 [Doc. 29].

Dr. Mullen is a practicing physician board certified in physical medicine and rehabilitation, with significant experience treating patients involved in vehicle accidents. *See* Pl.'s Br. at 1-2 [Doc. 32]. Dr. Mullen has provided expert medical testimony in multiple depositions. *See* Pl.'s Ex. 2 [Doc. #28-3]. Dr. Mullen began treating Zarling on April 16, 2008. In the course of treatment, Dr. Mullen reviewed Zarling's medical records from Stone County Hospital from November 7, 2007, the day after the motor vehicle accident at issue, and performed an interview and physical examination of Zarling. *See* Pl.'s Br. at 3 [Doc. 32].

The Defendant's allege that Dr. Mullen is an internist, and that his curriculum vitae evidences no training in orthopaedics, orthopaedic surgery or radiology. *See* Def.'s Br. at 2 [Doc. 29]. They further contend that Dr. Mullen ordered no MRI of Zarling's hip, and that there is no indication that Dr. Mullen referred Zarling to an orthopaedic surgeon. *Id.* at 3.

# ADMISSIBILITY OF EXPERT TESTIMONY

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule is that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining

3

whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171. Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Kumho*, 119 S. Ct. at 1176. In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." 119 S. Ct. at 1177.

This court has been instructed by *Kumho* interpreting *Daubert* that the opinions stated by Buchan are not the object of the relevancy and reliability determination but instead the court is required to determine the reliability of his basis for arriving at those conclusions. 119 S.Ct. at 1177. The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate

of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a determination of the issue before this court. Therein lies the flexibility of the gatekeeping responsibility as mandated by the Supreme Court. As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of "post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncement in *Kumho*, the trial courts were instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional

5

experience, education and training." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir. 2002). Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007) (*quoting Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

## ANALYSIS

In their arguments to exclude the expert testimony of Dr. James E. Mullen, the Defendants have advanced three areas of contention consistent with this court's ruling in *Knox v. Ferrer*, 2008 U.S. Dist. LEXIS 81504 (S.D. Miss. 2008), arguing that: (1.) Dr. Mullen is not qualified to diagnose a hip fracture or find orthopaedic surgery necessary; (2.) Dr. Mullen has not employed an appropriate level of intellectual rigor to support his opinions; and (3.) Dr. Mullen's opinions are not justified by the facts. *See* Def.'s Br. at 4 [Doc. #29].

**1.) QUALIFICATIONS**

The Defendants argue that Dr. Mullen is unqualified to diagnose a hip fracture or reliably opine that hip replacement surgery is necessary. Def.'s Br. at 4 [Doc. #29]. To establish this argument, the Defendants claim that Dr. Mullen practices internal medicine and specializes in rehabilitation, not orthopaedic surgery. As a result, the Defendants maintain that Dr. Mullen lacks the specialized knowledge to determine the necessity of a hip replacement operation. Citing *Tanner v. Westbrook*, 174 F.3d 542 (5th Cir. 1999) (in which a physician was found unqualified to testify as to the cause of cerebral palsy for having no background in studying cerebral palsy, and thus no specialized knowledge), the Defendants claim that because Dr. Mullen lacks sufficient specialized knowledge relevant to hip fractures or hip replacement, he cannot provide reliable expert testimony to either. Similarly, citing to *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (in which a polymer scientist with no background in the design of manufacture of tires was not qualified to testify specifically about tire separation), the Defendants argue that despite his general qualification as a medical doctor, there is no indication that Dr. Mullen's credentials justify a specialized opinion better addressed by an orthopaedic surgeon with regard to the type of an injury or its cause. The Defendants also argue that even orthopaedic surgeons may testify as to causation in motor vehicle accidents only when a physician has examined the injured party both before and after the accident, had taken MRIs before and after the accident, and was an orthopaedic surgeon specializing in spine treatment, citing *Craig v. Daimler Chrysler Corp.*, 2008 U.S. Dist. LEXIS 77379 (S.D. Miss. 2008).

The Plaintiffs argue in response that Dr. Mullen's board certification in physical medicine and rehabilitation provides sufficient credentials and experience to make determinations like those in the instant case. *See* Pl.'s Br. at 2 [Doc. #32]. The Plaintiff's further contend that in *Craig v. Daimler Chrysler Corp.*, the Court had no intention of imposing

the requirement that an expert witness must satisfy the elements outlined above. Rather, they contend that these merely happened to be the facts of that case. *Craig v. Daimler Chrysler Corp.* at 15. The Plaintiffs go on to note that if *Craig* was imposed as a standard as characterized by the Defendants, all citizens desiring the availability of expert testimony in any cases similar to the instant case must submit to MRIs and physical examinations by a full battery of specialists before operating or riding in a motor vehicle. This constitutes an unreasonable and undue burden.

The Court finds that Dr. Mullen's experience and professional qualifications, including board certification in physical medicine and rehabilitation satisfy the requirements to which the Defendants appeal in *Tanner v. Westbrook,* as well as the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993) and its progeny. The Court also finds that the Defendant's interpretation of *Craig v. Daimler Chrysler Corp.* is a mischaracterization which erroneously extrapolates an unduly burdensome standard out of the facts of that case.

The Plaintiffs have satisfied the Court in demonstrating Dr. Mullen's reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). The Court denies the Defendant's motion as to Dr. Mullen's qualifications.

**2.) INTELLECTUAL RIGOR AND METHODOLOGY**

The Defendants claim that Dr. Mullen failed to employ sufficient intellectual rigor, contending that an improper methodology was applied to establish the nature of the injuries sustained by Zarling. Def.'s Br. at 6 [Doc. #29]. The Defendants maintain that Dr. Mullen relied exclusively on x-rays taken five months after the automobile accident in order to reach his

conclusion, and that their own expert witness, orthopaedic surgeon James W. O'Mara, has found no evidence of a hip fracture in the x-rays taken by Dr. Mullen. Citing *Greer v. Bunge Corp.*, 71 F. Supp.2d 592, 596 (S.D. Miss. 1999) (finding that where common practice in veterinary medicine requires blood, urine, or tissue analysis the testimony of veterinarians relying only on observation of symptoms is inadmissible as employing a suspect methodology) the Defendants argue that Dr. Mullen's reliance on x-rays is a suspect methodology because Dr. Mullen's mere observation of symptoms cannot support his conclusions. *See* Pl.'s Br. at 6 [Doc. #29]. The Defendants also claim that statements made by Zarling are not compatible with Dr. Mullen's conclusion that Zarling's hip was injured as the result of an impact at a high rate of speed, and that Dr. Mullen lacks the credentials in biomechanics or accident reconstruction to testify as to the speed or force of the collision at issue or attempt to establish whether or not Zarlings' foot was braced against the brake. *Id* at 6-7.

The Plaintiffs contend that Dr. Mullen did employ sufficient intellectual rigor and an appropriate methodology. Pl.'s Br. at 3 [Doc. 32]. The Plaintiffs argue that Dr. Mullen performed a physical examination of Zarling and interviewed him in addition to taking x-rays, which Dr. O'Mara, the Defendant's expert, did not do. The Plaintiffs also argue that there are significant factors distinguishing the instant case from *Greer v. Bunge Corp.*; they opine that the observation of cows from a distance, with no accompanying interview, physical examination, or x-rays presents a very different situation from the present case, in which the subject was a human being who underwent each of these procedures. The Plaintiffs further argue that the use of x-rays by Dr. Mullen is within the normal course of treatment for patients with similar ailments.

The Court notes that disagreement between opposing expert witnesses, or disagreement with an expert witness's conclusion, does not establish inadequate methodology. The Court

further notes that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir. 2002). Based on Dr. Mullen's use of x-rays, interviews, and a physical examination of Zarling, the Court is satisfied that he has employed the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *See* Fed.Rules Evid.Rule 702, 28 U.S.C.A; *Kumho Tire*, 526 U.S. at 152, 119 S.Ct 1167 (1999).

The Court denies the Defendant's motion as to Dr. Mullen's methodology and application of appropriate intellectual rigor.


### 3.) JUSTIFICATION BY FACTS

The Defendants allege that Dr. Mullen's findings are not justified by the facts in the instant case, as laid out in *Knox v. Ferrer*. Def.'s Br. at 7 [Doc. #29]. The Defendants maintain that Zarling was unable to testify that he suffered any trauma, or that he experienced hip pain immediately following the accident. *See* Def.'s Ex. 1 at 22, 27 [Doc. #29-1]. The Defendants also aver that Dr. Mullen's causation theory for the hip injury (a sharp high speed impact while Zarling's foot was braced on the brake) is non-descript, vague, and inconsistent with Zarling's testimony. Def.'s Br. at 7 [Doc. #29].

The Plaintiffs assert in response that Dr. Mullen has distinguished the type of fracture he has diagnosed Zarling with as affecting the "… mechanism of loading through the foot and knee up into the hip…" which they maintain is consistent with the mechanism for potential impaction-type injuries, and would not "… obviously prevent the patient from being able to ambulate on that hip." Pl.'s Br. at 3 [Doc. 32].

The Court finds that the conclusions to which Dr. Mullen would testify are justified by the facts of the case. There has been no demonstration of facts indicating that Zarling's injury could not be a result of the motor vehicle collision in question, as purported by Dr. Mullen. The Court denies the Defendant's motion as to a lack of factual justification for Dr. Mullen's findings.

## **CONCLUSION**

**IT IS THEREFORE ORDERED AND ADJUDGED** that the motion to exclude expert testimony of Dr. James E. Mullen filed on behalf of the defendants [Doc. #28] is **denied**.

**SO ORDERED AND ADJUDGED** this the 21st day of July, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE